## Glenn E. Rowell et als v. Town of Tunbridge et als.

(98 A2d 72)

May Term, 1953.

Present: Sherburne, C. J., Jeffords, Cleary, Cleary and Adams, JJ., and Chase, Supr. J.

Opinion Filed June 16, 1953.

*Philip A. Angell* and *Gelsie J. Monti* for the petitioners.

*Wilson & Keyser* for the petitionees.

**Adams, J.** This is a petition for a writ of mandamus, brought by the petitioners against the town of Tunbridge and its selectmen. The prayer of the petition is that the writ issue commanding the petitionees forthwith to take such action as may be required to construct and erect a bridge on a road in said town. It is before this Court on the pleadings which consist of the petition, answer, replication, reply and a motion for judgment.

A mandamus proceeding is an action at law and the complaint, answer and subsequent pleadings are to be governed by the rules of the common law and must contain in substance, the essentials of good pleading in an action at law. Facts alleged in the petition as to which the defendant answers that he neither admits or denies, but calls upon the petitioner for his proof, are in the eye of the law admitted to be true. Each party admits all such traversable allegations on the opposite side as he does not traverse, and, under this rule, argumentative denials are not enough. To refuse to admit or deny an allegation is, in legal effect, a refusal to answer at all. *Barber* v. *Chase*, 101 Vt. 343, 349, 143 A. 302.

We, therefore, have the following facts before us for consideration. Since 1875 and probably since 1856, there existed in the defendant town a public highway of the class known as a town road. It consisted of a spur road running easterly from the Tunbridge-Chelsea highway, State Route 110, a short distance to the West Branch of the White River and thence across the river to the east bank via a covered bridge of about 74 foot span. This highway had been main-

tained and the bridge repaired and rebuilt by the town. The highway of which the bridge was a part furnished access to certain lands of the petitioners and some others and to an old cemetery on the east side of the stream. There are no buildings on any of this land.

On March 9, 1942, the bridge was removed from its foundation by ice and water and deposited on the Rowell meadow where it was cut up and dismantled. Since then the town has built several temporary bridges on the site of the old bridge. It has been impossible to keep and maintain these bridges because of high water and ice jams and no bridge has been maintained at the bridge site since January 1951.

On July 6, 1951, the selectmen of the town on notice and hearing found that the public highway or spur road extending from route 110 to the easterly abutment of the old covered bridge did not suit the public convenience and necessity and discontinued it. The petitioners in the instant case appealed from that action to the Orange County Court. Commissioners were appointed in those proceedings. They stated in their report, dated May 31st, 1952: "That the highway in question was convenient and necessary and should not have been discontinued by the town of Tunbridge on July 6, 1951, without providing a reasonable, convenient and adequate means of access to the land on the easterly side of the stream." On June 9, 1952, the court accepted the report of the commissioners and the action of the selectmen of July 6, 1951 discontinuing the highway was vacated.

On March 31, 1952, the selectmen, after notice and hearing, laid out a public road from route 110, a short distance northerly of the old spur road and covered bridge site, thence easterly crossing the stream by ford to the land of one Holt on the easterly side of the stream and to a right of way owned by James W. Farnham, who is one of the petitioners herein, thence continuing to the cemetery. The report of the commissioners dated May 31, 1952, further stated, "The above mentioned highway and ford established on March 31, 1952 does not provide adequate access for persons on foot crossing the stream and it does not provide a right of way to the easterly side of the stream to the Rowell land."

The petition in the instant case was brought on June 30, 1952, only 21 days after the report of the commissioners on the discontinuance of the spur road and bridge site was accepted by the court. It seeks, as we have seen, the issuance of the writ of mandamus to compel the erection forthwith of a bridge on that road at the old bridge site.

After July 29, 1952, the selectmen laid out and established a pent road from another public highway connecting with route 110. This pent road furnishes access to land of the petitioners, Rowell and Farnham, to the land of Holt and to the cemetery. Subsequent to the laying out of the pent road, the selectmen after notice and hearing, again discontinued the spur road including the old bridge site. The petitioners herein appeared at the hearings relative to the laying out of the pent road and the discontinuance of the spur road, answered and defended the same. In both of those proceedings, they have appealed from the action of the selectmen to the Orange County Court. Those appeals are now pending and no commissioners have, as yet, been appointed to hear the questions raised by the appeals and report to the court thereon.

■ In order to justify the issuance of a writ of mandamus it must appear that the petitioners have a clear legal right to the performance of the particular duty at the hands of the petitionees for which the writ is to be issued and that the law affords no other adequate remedy. *Matter of Mae Disorda Savage*, 112 Vt. 89, 92, 22 A2d, 153 and cases cited.

The petitioners claim that they have shown this right and that the town acting through its selectmen is legally obligated to build another bridge on the old bridge site. They refer to V. S. 47, §§5141 and 5150. The former provides that, "A town shall keep in good and sufficient repair at all seasons of the year its highways and bridges, other than those on the state highway system." The latter provides in part that bridges and culverts exceeding six feet in span shall be under the exclusive control of the selectmen, who shall keep the same in repair and rebuild when necessary. They say that the legislature has provided specific methods by which the obligation imposed by these sections may be fulfilled and re-

fer us to V. S. 47, §5125 as amended by No. 117 Acts of 1949, §1. This provides:

> "When a highway is made impassable, or of insufficient width for free passage, by a landslide or washout, or a bridge is swept away by a flood, the selectmen may change the location of the highway or bridge to a place less exposed, or where the cost of maintenance will be less, and may discontinue unnecessary parts of the old highway, or may take, damage or affect such land as may be necessary at the location of such slide or washout for the purpose of reestablishing, repairing, rebuilding or protecting such highway or bridge, and at once proceed to build or rebuild such highway or bridge and open the same for work and travel."

The petitioners' claim is that, because of this statute, the selectmen had only the right when the old bridge was destroyed by ice and high water on March 9, 1942, to change the location of the bridge and highway "to a place less exposed, or where the cost of maintenance will be less;" that, having resorted to another alternative by building temporary bridges on the old site, they then had no right to discontinue the old highway and bridge site but were legally obligated to build a bridge on the old site and that they thereafter had no choice in the matter to either relocate the highway and bridge or provide other means of access to the land in question.

■■ We do not agree. Such construction would, if a bridge is destroyed by a flood and a temporary bridge erected on the old site, then require a town to build a permanent bridge on the old site. A town could not later, after investigation as to cost and other factors, relocate the highway or bridge or provide other reasonable means of access to land served by the old bridge and highway. It is plain that such construction might very well lead to absurd consequences. In statutory construction those must be avoided if possible. *Estate of Brace* v. *Hulett*, 109 Vt. 360, 366, 196 A 742; *State Highway Board* v. *Gates*, 110 Vt 67, 72, 1 A2d 825, and cases cited. Also the construction advocated by the petitioners might lead to an unjust or unreasonable result. It is always

presumed in regard to statutes that such result was not intended by the legislature. *Billings* v. *Billings*, 114 Vt 512, 514, 49 A2d 179, 169 ALR 855, and cases cited.

■ Mandamus is an extraordinary remedy and it issues only in the exercise of sound judicial discretion. *Town of West Rutland* v. *Rutland Ry. L. & P. Co.*, 96 Vt 413, 420; 121 A 755; *Crystal Brook Farm Inc.* v. *Control Commissioners*, 106 Vt 8, 10, 168 A 912; *Matter of Mae Disorda Savage, supra*, 112 Vt at 94, 22 A2d 153. The petitionees have made an attempt to comply with the report of the commissioners, "That the highway in question * * * should not have been discontinued * * * without providing a reasonable, convenient and adequate means of access to the land on the easterly side of the stream." Whether or not they have succeeded are questions now before the Orange County Court on the appeals of the petitioners here from the action of the selectmen in laying out the pent road and the discontinuance of the spur road and bridge site in question.

The parties here are the same as in those proceedings and either of them can apply to the court where those proceedings are pending to have commissioners appointed and the questions there presented determined in that court. If we should grant the writ of mandamus in this case, we would, in effect, be substituting our judgment on the pleadings in this case for the judgment of the commissioners and the Orange County Court on the facts as presented in the appeals there pending.

■ Mandamus will not issue to compel the repair of a highway where there is a petition before the proper authorities to have the highway discontinued, even though it is instituted subsequent to the commencement of the mandanus proceeding. 55 CJS, Mandamus, §177, p. 337.

We will in our discretion in this case refuse to issue the writ. *Petition dismissed with costs.*