**UNITED STATES of America, Plaintiff,**

v.

**CAPITOL SERVICE, INC., Kohlberg Theatres, Inc., Marcus Theatre Corporation, and United Artists Theatre Circuit, Inc., Defendants.**

No. 80–C–407.

United States District Court,
E. D. Wisconsin.

March 23, 1981.

Fred E. Haynes and Peter B. Sobol, Attys., Antitrust Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Bertram M. Kantor and Paul E. Levine, Wachtell, Lipton, Rosen & Katz, New York City, Robert V. Abendroth, Whyte & Hirschboeck, Milwaukee, Wis., for United Artists.

Steven E. Keane and Trevor Will, Foley & Lardner, Milwaukee, Wis., for Marcus Theatres.

Alfred B. Teton, Gottlieb & Schwartz, Chicago, Ill. and Seymour Pikofsky and Barnett W. Franks, Franks & Pikofsky, Milwaukee, Wis., for Kohlberg.

John S. Holbrook, Jr., W. Stuart Parsons, Quarles & Brady, Milwaukee, Wis., for Capitol Service.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Plaintiff United States and defendant United Artists Theatre Circuit (UATC) have filed cross motions to compel production of documents and answers to interrogatories. UATC in its motion seeks four different types of information. Document requests 1, 3, 4, 5, 6 and 7 seek all information, documents and transcripts obtained during the pre-complaint investigation carried on by the antitrust division of the Department of Justice as well as information regarding splits in other cities obtained by the plaintiff from distributors, distributors trade groups and exhibitors since 1975. Document request 10 and interrogatories 16 and 18 seek information and documents dating back to 1948 regarding the antitrust division's prior support of distributor participating splits and the documents and information pertinent to the change of position which was announced on April 1, 1977. Documents 11, 12, 13, 14 and 18 request information on specific allegations of the complaint. Finally, defendant's document request 15 asks for any surveys, studies, analyses or reports prepared by or for plaintiff relating to the business of motion picture exhibitors in Milwaukee.

In response to these various requests, the plaintiff raises four general objections. Plaintiff asserts that much of the information requested is protected by one of three privileges: the work product privilege, the informant privilege, or the deliberative process of government privilege. It also contends that the information sought concerning the prior policy of the Justice Department regarding splits and the change of policy is irrelevant as is any information it has regarding splits in cities other than Milwaukee. These objections appear throughout plaintiff's responses and, consequently, a discussion of each is required to resolve the motion.

## RELEVANCY

Under the Federal Rules of Civil Procedure, a party is entitled to discovery on "any matter, not privileged, which is *relevant to the subject matter involved in the pending action.*" Rule 26 of the Federal Rules of Civil Procedure. In *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351,

98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978), the Supreme Court broadly interpreted the underlined phrase "to encompass any matter that bears, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." At the same time, however, the Supreme Court recognized that discovery is not unlimited and that discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1). *Id.* 351–52, 98 S.Ct. 2389–90. Therefore, in ruling on issues of relevancy, this Court must determine if the matters sought bear in any way on the subject matter of the action and whether the information can possibly lead to discovery of admissible evidence. In light of this standard, the Court will now address plaintiff's objection based on relevancy.

Plaintiff raises two issues of relevancy. The first concerns the change of policy by the Department of Justice which culminated in the press release of April 1, 1977. The second relates to the defendant's request for information obtained by the plaintiff since 1975 concerning the existence of splits in other cities. With regard to the change of policy the defendant has requested all documents relating to the press release of April 1, 1977 and all documents since 1948 relating to the prior position of the Department of Justice that distributor participating splits were legal. Plaintiff asserts that these documents are not relevant to this litigation because the plaintiff's prior position or exercise of prosecutional discretion does not have any bearing on this matter nor would it reveal any relevant evidence. Furthermore, the United States contends that its policy regarding exhibitor only splits has never been changed and because this is an exhibitor only split, the change of policy regarding distributor splits is irrelevant. Finally, although not directed to the issue of relevance, the plaintiff states it would place an undue burden on it to force it to comb its many files on the movie industry to produce the requested documents.

As to the requests for information on splits in other cities dating from 1975 to the present, the plaintiff asserts that this information is irrelevant because the complaint alleges a conspiracy limited to the Milwaukee market and because the split in Milwaukee is a per se violation of section 1 of the Sherman Anti-trust Act. Plaintiff also points to defendant's own objection regarding plaintiff's request for production of documents about another area of the country defendant is involved in. Defendant in its objection seeks as the plaintiff does here, to limit discovery to the Milwaukee market. Notwithstanding these objections, plaintiff has provided the defendant with non-privileged information and documents concerning distributors' policies towards splits. Plaintiff does not believe these documents are relevant, yet recognizes the potential argument that such statements would lead to admissible evidence regarding distributors' policies toward the Milwaukee split.

Defendant contends that the plaintiff's prior policy regarding distributor participating splits is relevant to an assessment of the nature, purpose, and effect of splits. Because defendant views this case as one that must be tried under the rule of reason theory, it believes that the plaintiff's past support of the practice is evidence of its rational basis and that plaintiff must have previously recognized some benefit to the practice. In support of this position, defendant cites the Court to the plaintiff's ongoing role of regulating the movie industry pursuant to the decrees entered in 1949 and 1952 in *United States v. Paramount Pictures*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948). In this regard, defendant also refers the Court to the Supreme Court's recent decision in *Broadcast Music, Inc. v. Columbia Broadcasting Systems, Inc.*, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

In *Broadcast Music, Inc.*, the Supreme Court considered whether the blanket license fees set by the American Society of Composers, Authors and Publishers (AS-CAP) and Broadcast Music, Inc. (BMI) for use of copyrighted material were *per se* illegal under the Sherman Anti-trust Act. The Court held that the practice was not *per se* illegal. The Court based its decision,

in part, on the government's extensive supervision of the alleged conduct and the existence of consent decrees between the government and ASCAP and BMI. The Court stated:

In these circumstances, we have a unique indicator that the challenged practice may have redeeming competitive virtues and that the search for those values is not almost sure to be in vain. (footnote omitted.) *Id.* at 13, 99 S.Ct. at 1559.

Based on this language, the defendant contends that the prior sanctioning by the plaintiff of split agreements is relevant to its defense. In addition, it is defendant's theory that the Milwaukee split is a distributor participating split and, consequently, there can be no question that the plaintiff's prior policy, even if limited to approval of distributor participating splits, is relevant.

With regard to its requests for documents concerning splits elsewhere, the defendant argues that these documents are relevant because the issue in this case is whether the distributors participated in this split. Defendant theorizes that if the distributors participated in the splits, it is likely that they participated in this split. The plaintiff has recognized the validity of this argument, at least to the extent that it agrees to provide non-privileged information regarding the distributors' policies.

█ Recognizing that it is quite possible for discovery in an antitrust case like this one to become unmanageable, the Court, nevertheless, must agree with defendant that the materials sought with respect to the prior position of the plaintiff and the change of policy are relevant to the subject matter of this action and could lead to admissible evidence. The language of the Supreme Court in *Broadcast Music, Inc. v. Columbia Broadcasting Systems, Inc.*, 441 U.S. at 13, 99 S.Ct. at 1559, strongly supports such a finding. Therefore, the Court must find that the plaintiff's objections based on relevancy with respect to request for production 10 and interrogatories 16 and 18 are unfounded.

The Court, however, finds the activities of the distributors in other splits are not relevant to the subject matter of this case. That the distributors may or may not have participated in splits in other markets does not have any relevancy to what they did in the Milwaukee market. Moreover, even if it was arguably relevant, it is so tangentially related to the main issue in this case that the Court finds is proper to curtail discovery on it.

█ Although the Court has found the requested documents relevant, this does not resolve the issue because plaintiff has raised a number of privileges. In addition, plaintiff claims that the burden of producing the records from 1948 to 1977 that relate to defendant's request is too onerous. Plaintiff has not, however, substantiated this objection. Although searching its records would be time consuming, the burden on plaintiff is not excessive given plaintiff's familiarity with the industry and its records and the strong relevancy of the documents. Consequently, there is no merit to plaintiff's claim that producing the documents is overly burdensome.

## INTERGOVERNMENTAL DELIBERATIVE PROCESS PRIVILEGE

█ The privilege against disclosure of intra-governmental documents containing advisory opinion recommendations and deliberations is part of a broader executive privilege recognized by the courts. *See, e. g., United States v. Nixon*, 418 U.S. 683, 705–711, 94 S.Ct. 3090, 3106–3109, 41 L.Ed.2d 1039 (1974); *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953); *Smith v. Federal Trade Commission*, 403 F.Supp. 1000 (D.Del.1975); *Black v. Sheraton Corporation of America*, 371 F.Supp. 97 (D.D.C.1974); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C.1966), *aff'd. V. E. B. Carl Zeiss, Jean v. Clark*, 384 F.2d 979 (D.C. Cir.) *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). The purpose of the privilege is to ensure that the decision makers in government are provided with candid and frank advice. "The theory is that if advice is revealed, associates may be reluc-

tant to be candid and frank. It follows that documents shielded by executive privilege remain privileged even after the decision to which they pertain may have been effected, since disclosure at any time could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 359–360, 99 S.Ct. 2800, 2811–2812, 61 L.Ed.2d 587 (1979). The privilege, however, is not absolute, it may be overcome by an appropriate showing of need. In addition, the privilege does not attend to purely factual communications which do not involve state or military secrets. *Smith v. Federal Trade Comm.*, 403 F.Supp. at 1015. Finally, the burden is on the claiming party to prove that it is entitled to assert the privilege. *Id.* at 1016.

 Because the privilege is based, in part, on the separation of powers between the three branches of government, the courts have been exceedingly cautious not to invade the province of the executive by requiring disclosure of privileged material to the Court for *in camera* inspection. *United States v. Reynolds*, 345 U.S. at 7–9, 73 S.Ct. at 531–533. Balanced against this, however, is the Court's need to fulfill its own duty. Consequently, the courts have established three prerequisites for the successful assertion of the intra-governmental deliberative process privilege. First, the privilege must be made by the head of the department which has control over the material after actual personal review and consideration of the materials. Second, the claim must specifically describe and designate the documents sought to be withheld. Third, the claim must state the precise and certain reasons for preserving the confidentiality of the communications. *Smith v. Federal Trade Comm.*, 403 F.Supp. at 1016. *See Black v. Sheraton Corporation of America*, 371 F.Supp. at 101. Strict and full compliance with these requirements is of critical importance if the Court is to properly determine the validity of the asserted privilege without interfering unduly with the agency involved. *In camera* inspections of documents claimed under this privilege should be a last resort. *United States v. Reynolds*, 345 U.S. at 8–11, 73 S.Ct. at 532–534, *see United States v. Nixon*, 418 U.S. at 714–15, 94 S.Ct. at 3110–11.

The defendant UATC has raised a number of objections to the plaintiff's assertion of the governmental privilege. First, UATC contends that the Attorney General is exceeding the scope of the privilege by claiming protection for purely factual material—the four memoranda described as economic analysis of splits. Second, the UATC alleges that the Attorney General's description and designation of claimed privileged documents is legally insufficient because it does not allow the Court to make an informed decision as to whether the documents come within the privilege. Finally, the defendant claims that, aside from a few "boilerplate paragraphs" in the Attorney General's affidavit, there is no showing of "precise and certain reasons" for preserving the confidentiality of the documents. *Smith v. Federal Trade Comm.*, 403 F.Supp. at 1016. The paragraphs referred to by defendant state that the documents claimed are deliberative documents and that the public disclosure of the internal deliberative process would "create an inhibiting atmosphere unconducive to the formulating or implementation of sound policy." (Affidavit of Attorney General Benjamin R. Civiletti, ¶ 5.)

The Court has carefully reviewed Attorney General Civiletti's affidavit, giving due deference to his position and claims. The Court has also considered the objection of defendant UATC. Defendant's objections regarding the specificity of the documents claimed and the reasons for continuing secrecy have some merit. The Attorney General and his staff are thoroughly familiar with the governmental privilege and they are equally aware that the more specific their claims are, the more likely the Court will rule in their favor. Nevertheless, the plaintiff has chosen to submit a very general claim of privilege. Therefore, the Court is compelled to rule on the claims as presented.

■ Despite the less-than-thorough claim, the Court finds that the plaintiff has made a proper claim of intra-governmental deliberative process privilege with respect to all documents except the economic analyses which bear the document date numbers 760816, 760903, 770302. With regard to these documents, there is nothing in the description to indicate that these are anything but factual reports which are not protected by the privilege. Furthermore, although the plaintiff's reason for continuing secrecy is general, it is valid. In fact, it is the very reason for the existence of the privilege. *Federal Open Market Committee v. Morrell*, 443 U.S. at 359–60, 99 S.Ct. at 2811–12. Based on the description of the documents and reasons for continued secrecy, the Court is satisfied that these documents, excluding the economic analysis of splits referred to above, are protected by the privilege. Therefore, they will not be ordered produced unless and until defendant convinces the Court that its need for them outweighs the continuing need for secrecy proffered by the plaintiff. The economic analyses, however, are not privileged and will be ordered produced unless they are subject to another of the claimed privileges.

## INFORMANT PRIVILEGE

In *Roviaro v. United States*, 353 U.S. 53, 59–60, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957), the Supreme Court set out the scope and purpose of the informant's privilege. The Court stated:

> [the privilege] is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Id.* at 59, 77 S.Ct. at 627.

The purpose of the privilege is to ensure that those persons having information will come forward with it. *Id.* at 60, 77 S.Ct. at 627. The protection afforded informants by the privilege makes it easier for them to come forward without fear of reprisal. The purpose of the privilege, however, limits its scope. It applies only to the identity of the informant. "Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id.* at 60, 77 S.Ct. at 627. There are two further limitations on the privilege. First, if the identity of the informant is revealed, the privilege is destroyed. Second, the privilege may be overcome where the informant's identity or communications of the informant are relevant and helpful to the defense or essential to a fair determination of the cause of action. *Id.* at 60–61, 77 S.Ct. at 627–628.

Although it originally developed in the criminal justice sphere, the informant's privilege is equally applicable to civil cases. *Westinghouse Electric Corp. v. City of Burlington, Vermont*, 351 F.2d 762, 769 (D.C. Cir. 1965). The privilege has been asserted in a number of antitrust actions. *E. g., United States v. Real Estate Board*, 59 F.R.D. 637 (E.D.Mo.1973); *United States v. Aluminum Ltd.*, 268 F.Supp. 758 (D.N.J. 1966); *United States v. Grinnell Corp.*, 30 F.R.D. 358 (D.R.I.1962); and *United States v. First National Bank & Trust Co. of Lexington*, 1961 Trade Cas. 970,074 (E.D.Ky. 1961).

The Government has asserted the informant privilege in this case to withhold from UATC a number of documents. According to the Government, it has provided defendant with everything it can without revealing its informants. The documents presently being withheld, in the Government's opinion, reveal the identity of the informants and, therefore, come under the protective umbrella of the privilege. The plaintiff also contends that the defendant's only need for the identity of its informants would be for impeachment purposes at trial. Therefore, the Government has agreed to provide UATC with supplementary answers to interrogatories prior to trial disclosing those informants it intends to call at trial and information they provided to the Government. Other courts have adopted such procedures, *e. g., United States v. Real Estate Board*, 59 F.R.D. at 641; *United States v. Aluminum Ltd.*, 268 F.Supp. at 765; and the Government urges this Court

to do so. Finally, the plaintiff has offered to submit the document to the Court, *in camera*, for a review in an effort to support its claim of privilege.

Defendant alleges that the Government has already waived any informant privilege it might have had with respect to the distributors because the distributors are known to UATC. Furthermore, because the distributors are in a better position economically vis-á-vis the exhibitors, the defendant questions the validity of privilege in this instance because there can be no thought of retribution or retaliation by the exhibitors. Finally, UATC classifies this action for injunctive relief as a punitive civil action. Consequently, it claims that its right to full and fair discovery outweighs any continuing need for secrecy.

■ Defendant's objections are unfounded. First, that the general population from which the informants come from has been identified does not constitute a waiver of the privilege as to any individual informant. *Brennan v. Engineering Products, Inc.*, 506 F.2d 299 (8th Cir. 1974). If it did, the privilege would be of little utility in most instances. Second, it is the threat of retaliation or retribution which the privileges are designed to protect against. Finally, the Court finds nothing punitive in an action seeking injunctive relief.

■ Notwithstanding the futility of these objections, the defendants are entitled to discovery of information provided by those informants who have now waived their privilege. *See* Part IX of this decision, "Third Party's Motion for a Protective Order." With respect to any other informants who have not waived their privilege, the Court must review the documents claimed under the privilege to determine whether any portions of the documents can be produced without the possible disclosure of the informant's identity. Consequently, the plaintiff is hereby ordered to submit a list of the documents and a copy of each document to the Court for its *in camera* inspection within fifteen (15) days of the receipt of this order. If after reviewing the documents, the Court concurs with plaintiff's assessment, it will then determine whether the defendant's need outweighs the need for non-disclosure.

## WORK PRODUCT PRIVILEGE

The final privilege asserted by the Government is the work product privilege. Under rule 26(b) of the Federal Rules of Civil Procedure, there is a conditional privilege for documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . ." These materials are privileged unless the party seeking them can demonstrate substantial need for the material and cannot obtain it by other means without undue hardship. Opinion work product, however, is absolutely protected from disclosure. Opinion work product includes mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

The dispute between the parties over the claim of work product privilege concerns the scope of the privilege. Plaintiff urges the Court to adopt the modern view that the work product privilege extends to documents prepared in anticipation of *any* litigation, not just the instant litigation. *In re Murphy*, 560 F.2d 326 (8th Cir. 1977); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973). Defendant urges the Court to follow Judge Reynold's stricter interpretation of the work product privilege and limit it to materials produced in anticipation of this litigation. *Thill Securities Corp. v. New York Stock Exchange*, 57 F.R.D. 133, 138 (E.D. Wis.1972). Defendant's reliance on *Thill*, however, is undercut by Judge Reynold's recent decision in *First Wisconsin Mortgage Trust v. First Wisconsin Corporation*, 86 F.R.D. 160, 165 (E.D.Wis.1980), wherein he adopted the modern view laid out in *Duplan*.

■ This Court has given careful consideration to the position of both parties and must conclude that the policy of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91

L.Ed. 451 (1947), is best served by the adoption of the modern rule. The reasoning set out by the Eighth Circuit in *In re Murphy*, 560 F.2d at 334–335 is compelling and this Court adopts it as the basis of its decision.

■ Again, because the plaintiff has made only the bare allegation that the information sought is work product, the Court will require that the plaintiff produce for inspection by the Court a detailed list of the documents withheld, with a full and complete description of what they contain, as well as the documents themselves, within 15 days of receipt of this order. If the Court determines that the documents are protected, it will then face the issue of whether the defendant has met its burden of showing a substantial need for the information.

### PLAINTIFF'S MOTION TO COMPEL

■ Plaintiff has also filed a motion to compel production of certain documents and answers to certain interrogatories. After the filing of this motion, the plaintiff and the defendant resolved a number of issues without the intervention of the Court. The remaining issues are: (1) whether the plaintiff is entitled to the discovery of documents and information from 1975 to 1977 and the post complaint period; (2) whether UATC must produce its general policy statement on splits; and (3) whether UATC properly deferred the answering of interrogatory 16.

Plaintiff asserts that it is entitled to discovery from the period of January 1975 to January 1977. Defendant has resisted alleging that it is irrelevant inasmuch as the alleged conspiracy did not begin until November of 1977. The plaintiff, however, contends that discovery from the period of 1975 to 1977 is important to show the nature, purpose, and effect of the Milwaukee split agreement. According to the plaintiff, the evidence will show that, in 1975, the defendants had a split arrangement but that it broke up over a dispute regarding a certain film. Thereafter, until the present split, the defendants competitively bid for exhibition rights. The Government believes that discovery from 1975 to 1977 will assist it in proving the nature, purpose, and effect of the split as well as the defendants' motive in entering the split. Finally, the plaintiff notes that the other defendants have provided the information requested.

UATC has opposed the discovery of any documents or information prior to January 1977. UATC contends that the information is irrelevant because there is no allegation of a continuing conspiracy from 1975 to the present. Defendant also asserts that it has admitted to the existence of the prior split and to the period of competition so no further proof is necessary. In addition, UATC argues that the existence of the prior split is not probative of the present split. Finally, it alleges that because the prior split occurred before the April, 1977, press release, it was presumptively legal and, therefore, has no relevance to this split.

If the Government was trying to gather evidence of the 1975 split to prove the existence of the 1977 split, the information would be irrelevant. *E. G. Dart Drugs Corp. v. Parke, Davis & Co.*, 344 F.2d 173, 184–185 (D.C. Cir. 1965); *International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449 (1st Cir.), *cert. denied*, 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963). In this instance, the Government is not doing so and does not have to do so because the split is admitted to by the defendants. The Government is, however, trying to amass evidence as to the nature, purpose and effect of the present split. Because a comparison between the situation prior to the split and during it is an effective method of discovering the effect of the split and possibly its purpose, the Court finds that the information sought is relevant. Therefore, the Court hereby orders that the defendant UATC supplement its responses to the plaintiff's discovery requests by providing the information requested from January 1975 to January 1977.

### POST COMPLAINT DISCOVERY

■ Plaintiff has sought discovery from UATC up to the present date. Defendant

has objected to producing any discovery for the period after the filing of the complaint. Defendant contends that such discovery will result in its officials becoming agents of the plaintiff. Plaintiff asserts that it needs the information to help witnesses' recollection of prior events that might not be as fresh as present events.

The complaint in this case alleges a continuing violation of the Sherman Anti-trust Act. Therefore, as a matter of common-sense, the information and documents produced during the period of the conspiracy are relevant. Contrary to defendant's suggestion, defendant's officers will not become agents for the plaintiff. UATC has open to it the same privileges as any other litigant. If it believes certain requested information is privileged as work product, it can assert that privilege and the Court will rule on it. Otherwise, the Court is convinced that there is no merit to their objection as to plaintiff's request for post complaint information. Therefore, UATC is hereby ordered to supplement its responses to plaintiff's discovery by providing the information requested after the complaint was filed.

### GENERAL POLICY OF UATC REGARDING SPLITS

▮ In plaintiff's request for production of documents 5 and 6, the Government seeks any documents of UATC which refer or relate to any policy of UATC regarding splits and documents which relate to the Government's policy concerning splits including but not limited to the April 1, 1977 press release. Defendant responded to the request by stating that two such documents existed but were not relevant because they did not relate to the Milwaukee split but only to splits in general. Defendant continues to argue that these documents are not relevant because they were produced prior to the formation of the split.

The Government argues that the information is relevant because it may produce evidence of the purpose or effect of splits. In addition, because the defendant's vice president allegedly took an active role in forming the present split, the Government contends that these documents would most likely reveal his views on splits. Finally, the plaintiff asserts that it is entitled to the information because defendant has requested similar information from it.

Plaintiff's final argument is of little merit. Whether a request is calculated to produce relevant evidence must be determined on the merits of the request alone and not on a me-too basis. In this instance, the Court finds that the documents described are relevant and, therefore, hereby orders the defendant to produce them.

### DEFENDANT'S ANSWER TO PLAINTIFF'S INTERROGATORY 16

▮ The final issue remaining is defendant's answer to plaintiff's interrogatory 16. Interrogatory 16 requests information concerning defendant's allegation that splits "enhance the flexibility of motion picture distributors in the determination of release dates of motion picture product on multiple or second run bases." Defendant's response was that it was unable to answer until it had completed discovery. Plaintiff asserts that it is entitled to at least a partial answer now because defendant must have had something in mind when it made the allegation. Defendant states that the allegation was made upon "information and belief" and that there is no current documentary or testimonial evidence which will support the allegation.

The Court finds nothing unreasonable in the defendant's response. It will, however, affirmatively order defendant to continue to supplement its answers as information or documents become available to support this allegation. While the Court has no doubt that defendant would do so based on the rules of procedure, the added sanction of a court order will protect plaintiff from any surprise answers at the final moments of discovery.

### THIRD PARTY'S MOTION FOR A PROTECTIVE ORDER

The defendant UATC has filed a number of subpoenas duces tecum on representa-

tives of the major distributors. These third parties are: Eugene Margoulis, John Pickos, Raymond McCafferty, D. Barry Reardon, Eugene Tunick, and Terry Semel. They have moved for a protective order and modification of the subpoenas served on them pursuant to rules 45, 30 and 26 of the Federal Rules of Civil Procedure. In addition, the plaintiff has moved for a modification of the subpoenas.

The third party movants originally objected to the requests set out in paragraphs 1, 2 and 3 of the defendants' subpoenas duces tecum on the grounds that the information not restricted to the Milwaukee geographical area was irrelevant and that the requests were barred by the informant's privilege. Since then, however, the third parties have informed the Court that they are waiving any informant's privilege that any of them might have with respect to any documents given to the Government regarding the Milwaukee split. Therefore, they ask the Court only to decide the relevancy of the defendants' request as to material concerning splits in other cities. The Government joins in the request and continues to assert the informant's privilege with respect to information given to it on splits in other cities.

Plaintiff and third party movants argue that information on splits in other cities is irrelevant because, under a *per se* theory or a rule of reason theory, the issue is the effect on the local market. In addition, they argue that the only purpose this information would serve would be to impeach distributors who testify at trial. Presumably, defendant would show that the distributors are not trustworthy because they participated in other splits so that the inference must be that they participated in the Milwaukee split.

As stated previously, the actions of the distributors in other markets are not relevant to this case. The conspiracy alleged in this action is one involving only the Milwaukee market and, therefore, what the distributors do or did elsewhere is of no consequence. On the basis of this finding, the Court will hereby order that defendant's

subpoenas be modified such that the requested documents be limited to documents involving the Milwaukee area. The one exception to this ruling is demand 3. Document demand 3 seeks "all studies, surveys, reports, analyses, and memorandum relating to or referring to motion picture splits, including, without limitation, the economic effect of motion picture splits on distributors and/or exhibitors of motion pictures." Inasmuch as such general documents exist, the Court finds that they are relevant and defendant is entitled to them.

In summary, defendant's and plaintiff's motions to compel are granted in part and denied in part. The third party's motion for a protective order and plaintiff's motion for a modification of defendants' subpoenas are granted in part and denied in part.