Professional Nurses Service, Inc. v. Smith, No. 732-12-04 Wncv (Katz, J., July 14, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                      SUPERIOR COURT
Washington County, ss.:                          Docket No.732-12-04 Wncv


PROFESSIONAL NURSES SERVICE, INC.,

v.

CHARLES SMITH


ENTRY


This is a public records access case, filed after the Vermont Department of Aging and Disabilities—and the Secretary of the Agency of Human Services on appeal—partially denied an access to public records request by Plaintiff Professional Nurse Service, Inc.

Plaintiff made an extensive public records request to the Department believing that the requested documents might aid its application for a "certificate of need" with the Commissioner of Banking, Insurance, Securities, and Health Care. The Department provided access to all requested documents but two: each is a two-sided single-page memorandum from Patrick Flood, Commissioner of the Department, to Charles Smith, Secretary of the Agency. Claiming that each memorandum consists of frank, deliberative policy discussion, the State denied access to

these documents citing the executive and the deliberative process privileges.

The Access to Public Records Act, 1 V.S.A. §§ 315–320, explicitly incorporates common law privileges, *id*. § 317(c)(4).  A privilege recognized under § 317(c)(4) may justify the denial of access to a requested public record.  Vermont first recognized the doctrine of executive privilege in *Killington, Ltd. v. Lash*, 153 Vt. 628, 636–37 (1990).  The *Lash* Court made clear that, while the term "executive" has been used broadly by some courts to refer to privileges extending beyond the actual "chief executive," in Vermont, for purposes of the privilege, "executive" means "governor." See *id*. at 632 n.3; see also *New England Coalition v. Office of Governor*, 164 Vt. 337, 340-42 (1995) (distinguishing executive privilege from the more broadly applicable deliberative process privilege and FOIA exception 5).  Because the disputed memoranda in this case are unrelated to the governor, we agree with Plaintiff that the executive privilege, as recognized in Vermont, does not apply.

The State maintains, however, that the deliberative process privilege, which is similar to the executive privilege but applies to communications between government officials other than the governor, applies to these documents and should be recognized under 1 V.S.A. § 317(c)(4).  The Vermont Supreme Court has never addressed the recognition of the deliberative process privilege.

Generally, the deliberative process privilege allows the government (other than the chief executive) to withhold from public access information of an advisory or deliberative nature that relates to the governmental decision or policy-making process.  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); see generally Russell L. Weaver and James T.R. Jones, The Deliberative Process Privilege, 54 Mo. L. Rev. 279 (1989) (discussing substantive and procedural requirements of the privilege).  The privilege's ultimate purpose "'is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d at 737 (quoting *NLRB v. Sears,*

2

*Roebuck & Co.*, 421 U.S. 132, 151 (1975)).  It was first adopted overtly by a federal court in *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939 (Ct. Cl. 1958), but its common law roots long predate that case.  For a detailed discussion of the common law origins and evolution of the doctrine, see Gerald Wetlaufer, An Objection to the General Deliberative Privilege, 65 Ind. L.J. 845, 856–82 (1990).  Since *Kaiser*, "the question of whether there ought to be a privilege has received only the most perfunctory and stylized attention.  All the serious energies of the [federal] courts have, instead, gone into the development of rules related to the application of the privilege."  Wetlaufer, *supra*, at 875.

Though varying state laws have made state treatment of the privilege less consistent than federal treatment, numerous state courts have recognized it.  See *City of Colorado Springs v. White*, 967 P.2d 1042, 1049 (Colo. 1998) (collecting cases).  We are persuaded that the Vermont Supreme Court would recognize the privilege as well—not to venerate the privilege's position in the common law but because its role in the effective administration of government is crucial.  See generally *id.* (exhaustively analyzing and then recognizing the privilege in Colorado).  We recall here that 1 V.S.A. § 317(c)(4) calls upon us to evaluate—and thus participate in—the common law, the evolving body of law derived from judicial decisions.

> The common law . . . is inarticulate until it is expressed in a judgment . . . .  Where the common law governs, the judge, in what is now the forgotten past, decided the case in accordance with morality and custom and later judges follow[] his decision.  They [do] not do so by construing the words of his judgment.  They look[] for the reason which had made him decide the case the way he did, the *ratio descendi* . . . .[,] the principle of the case.

Patrick Devlin, The Judge 177 (1979)); see also *Hay v. Medical Ctr. Hosp.*, 145 Vt. 533, 542 (1985) ("It is the role of this Court to adapt the common law to the changing needs and conditions of the people of this state . . . .").

3

Even if the privileges are not coextensive, the governmental need for the deliberative process privilege—and the corresponding public benefit—is just as compelling as that for the executive privilege. "As objectionable as the image is of government conducted in secrecy's darkened chambers, it is hard to imagine a government functioning with no opportunity for private exchange among its ministers, with no moments of speculation, venturesome alternatives, or retractable words." *Killington, Ltd.*, 153 Vt. at 637. This guiding insight, which motivates Vermont's executive privilege cases, applies with equal vigor to the more widely applicable deliberative process privilege.

Plaintiff opposes the recognition of the privilege, arguing that it would eviscerate the Access to Public Records Act and its strong open-government policy: the government, presumably, would render the Act hollow by always claiming the privilege. Acknowledging that the Act strongly favors open government, we note that there are no fewer than 35 specific statutory exceptions to public access, of which common law privileges are a part of but one. Though we construe the exceptions strictly in favor of access, *Springfield Terminal Railway Co. v. Agency of Transp.*, 174 Vt. 341, 345 (2002), still, the implied suggestion that the Act makes all or nearly all public records accessible is more rhetoric than reality. The Act and how we apply it reveal a tension with which we should struggle: between openness at one end, and privacy and effective governance at the other. We do not by recognizing the privilege add a new exception that will swallow the rule; we merely apply recognized law as part of an exception that the Legislature itself specifically created: 1 V.S.A. § 317(c)(4).

The Legislature also specifically created an exception analogous to the deliberative process privilege for political subdivisions of the state, § 317(c)(17), exempting from access "records of interdepartmental and intradepartmental communications in any . . . political subdivision of the state to the extent that they cover other than primarily factual materials and are preliminary to any determination of policy . . . ." Interpreting the Act to exempt such information when it arises in the smaller and more intimate

political subdivisions of the state, where policy consideration is far more likely to be oral, but not when it arises in the larger agencies of the state, where written communication is far more likely to occur, would be irrational.  See *Rowell v. Tunbridge*, 118 Vt. 23, 27-28 (1953) (irrational statutory interpretations should be avoided where possible).

Plaintiff's argument in opposition to the privilege, however, is really more about its breadth—the extent to which it should be limited and how it should be applied—than whether it should be recognized.  The privilege does not apply where its purposes are not served.  *White*, 967 P.2d at 1051.  The government has the initial burden of showing that the requested information genuinely is part of a predecisional and deliberative process.  *Id*. at 1053.  Even where it applies, like the executive privilege, *Killington, Ltd.*, 153 Vt. at 637, the deliberative process privilege is qualified, *White*, 967 P.2d at 1051.  A party seeking the information may overcome the privilege with a sufficient showing of need.  The exception does not risk swallowing the rule.

We turn then to the facts of this case.  The State has discharged its initial burden by submitting a *Vaughn* index, which describes the two requested documents, and affidavits from both the author and recipient of the memoranda.  *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); see generally Weaver & Jones, supra, at 300-12 (describing the *Vaughn* index and affidavit requirements).  These submissions reveal that each short memorandum was written by Commissioner Flood, a subordinate, to provide frank opinions and advice exclusively to Secretary Smith, his superior, directly relating to the Secretary's contemplations on the general topic of Vermont's home health system, and, at least in part, on the more specific topic of a certificate of need, policy matters plainly within the scope of the roles of the Commissioner and the Secretary.

While the State's *Vaughn* index is not particularly detailed, it is sufficient in the circumstances of this case.  The general subject matter of the memoranda is advisory (deliberative) in nature, and was provided to the Secretary for his use in contemplating matters of policy.  Both the

Commissioner and the Secretary treated the memoranda as a confidential predecisional policy discussion. As the memoranda may relate to Plaintiff's application for a certificate of need before BISHCA, we note that the Secretary eventually made a specific "decision," which appears in a letter—to which Plaintiff has access—from Secretary Smith to BISHCA Commissioner Crowley. See Defendant's Motion for Summary Judgment at 9 (filed Jan. 31, 2005). The *Vaughn* index does not more specifically detail the decisions the Secretary was considering when he received the memoranda, but an internal policy discussion need not even ripen into a specific decision for the privilege to apply. See *White*, 967 P.2d at 1051 n.8. It is the nature of the governmental process at work, not its result, that matters. We reject Plaintiff's claim that the accompanying affidavits are not based on the personal knowledge of the affiants. The affidavits are signed by the Commissioner and Secretary, the author and recipient, respectively, of the memoranda, after all.

We see no reason in these circumstances to review the memoranda in camera, or to order the State to supplement the index. See 1 V.S.A. § 319(a) (the court may, but is not required, to do in camera review). We conclude that the State has shown that the deliberative process privilege supports its decision to deny access to the two requested memoranda.

Plaintiff argues that it has a need for the documents that outweighs the State's interest in maintaining their confidentiality, namely, that they may contain some information that could in some way aid its certificate of need application. That bare allegation alone, however, is not a sufficient showing of need. Plaintiff does not explain why knowing the Commissioner's advice—the options the Secretary entertained (the memoranda)—is important, particularly considering that it knows the option (the letter) that the Secretary later chose. Ordinarily, it is the "postdecisional" information, the chosen alternative, that "the public has a strong interest in" as that becomes the "'working law' of the agency." *White*, 967 P.2d at 1051 (quoting *Sears*, 421 U.S. at 152). Nor does Plaintiff attempt any showing of governmental wrongdoing or improper motives that might suggest an inappropriate application of the privilege.

6

The State's motion for summary judgment is granted.  The State's motion to dismiss is denied as moot.  Plaintiff's motion for summary judgment is denied.

Dated at Montpelier, Vermont, _____, 20___.


_____
Judge