1
 Kristy Archuleta, in her official capacity as the Clerk and Recorder of Archuleta County, Petitioner: v. Matt Roane. Respondent: No. 23SC70
Supreme Court of Colorado, En Banc
December 9, 2024
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 22CA204
 
 
          
 Attorneys for Petitioner: Archuleta County Attorney's
 Office Todd A. Weaver, County Attorney
 
 
           Pagosa
 Springs, Colorado Respondent Matt Roane, pro se
 
 
           Pagosa
 Springs, Colorado
 
 
          
 Attorneys for Amici Curiae ACLU of Colorado and Colorado
 Freedom of Information Coalition: Timothy R. Macdonald Anna
 I. Kurtz Laura Moraff
 
 2
 
          Denver,
 Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Counties, Inc.: Hall
 &Evans, L.L.C. Andrew D. Ringel Denver, Colorado
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 JUSTICE BOATRIGHT, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE
 BERKENKOTTER joined. CHIEF JUSTICE MARQUEZ, joined by JUSTICE
 SAMOUR, concurred in the judgment.
 
 3
 
          
 OPINION
 
 
           HOOD,
 JUSTICE.
 
 
          ¶1
 Respondent Matt Roane was engaged in litigation with the
 Archuleta County Board of Commissioners ("Board")
 when he sent a Colorado Open Records Act ("CORA"),
 §§ 24-72-200.1 to -205.5, C.R.S. (2024), request to
 Archuleta County Clerk and Recorder, Kristy Archuleta. In
 that request, Roane sought a copy of a recent Board meeting
 recording. Archuleta denied the request, claiming it
 unlawfully circumvented the Colorado Rules of Civil
 Procedure. Roane had not sought any records through discovery
 in his civil action against the Board. Reasoning that his
 civil action and his CORA request were not legally
 interdependent, Roane sued Archuleta alleging that Archuleta
 had violated CORA.
 
 
          ¶2
 Section 24-72-204(1)(c), C.R.S. (2024), provides that
 inspection of a public document may be denied when
 "[s]uch inspection is prohibited by rules promulgated by
 the supreme court or by the order of any court." The
 issue we address today is whether this provision allows a
 public entity to invoke the Rules of Civil Procedure to deny
 a CORA request to inspect documents related to pending
 litigation. We hold that a litigant may obtain records under
 CORA even if those records are relevant to pending litigation
 and the litigant has propounded no document requests under
 the Rules of Civil Procedure.
 
 4
 
          I.
 Facts and Procedural History
 
 
          ¶3
 In 2020, Roane initiated a declaratory-judgment action
 against the Board, alleging that the Board should have taken
 minutes at its September 22 "work session." This
 action was subject to C.R.C.P. 16.1, but Roane chose not to
 submit any document requests under that rule. Instead, Roane
 submitted a CORA request for documents related to the
 September 22 meeting as well as for a tape recording of a
 related October 6 meeting. Archuleta denied the CORA request
 in a letter from the Archuleta County Attorney, who cited
 section 24-72-204(1)(c) and Martinelli v. District
 Court, 612 P.2d 1083, 1093 (Colo. 1980). The letter
 asserted that Archuleta didn't have to produce the
 requested materials because Roane was "seeking
 information to support [his] Motion for Summary Judgment in
 [his suit against the Board]" in violation of CORA and
 C.R.C.P. 34. (The letter didn't explain how the request
 would violate Rule 34.)
 
 
          ¶4
 In January 2021, Roane filed a CORA action against Archuleta.
 In his complaint, Roane sought an order to show cause why the
 October 6 recording should not be made available and sought
 an order requiring Archuleta to make the recording available
 to him. The district court granted the motion to show cause,
 noting that Archuleta's argument "presupposes that
 [C.R.C.P.] 16.1 prohibits [Roane] from preparing his case by
 obtaining evidence independent of the discovery and
 disclosure procedures outlined in Rule 16.1." Because
 Rule 16.1
 
 5
 
 creates no such prohibition, the district court ordered
 Archuleta to produce the recording.
 
 
          ¶5
 In February 2022, Archuleta appealed the district court's
 order, arguing that the district court erroneously permitted
 Roane to use a CORA request to "supplant discovery
 practice in civil litigation, in complete contradiction
 to" Martinelli and City of Colorado Springs
 v. White, 967 P.2d 1042 (Colo. 1998). A division of the
 court of appeals disagreed. In a unanimous published opinion,
 it held that the plain language of CORA, relevant Colorado
 caselaw, and persuasive precedent from other jurisdictions
 support Roane's position that litigation against a public
 entity doesn't preclude a litigant's use of CORA to
 inspect that entity's public records. Roane v.
 Archuleta, 2022 COA 143, ¶¶ 1, 12, 526 P.3d
 220, 223-24. Accordingly, the division affirmed the district
 court's inspection order. Id. at ¶ 64, 526
 P.3d at 231.
 
 
          ¶6
 We granted Archuleta's certiorari petition for review of
 the division's decision.[1]
 
 6
 
          II.
 Analysis
 
 
          ¶7
 After addressing the standard of review and commonplace
 principles of interpretation, we focus on the language of
 CORA and our rules of civil procedure. Next, we examine
 Colorado caselaw before turning to federal precedent
 interpreting the Freedom of Information Act
 ("FOIA"). Lastly, we consider other states'
 understanding of similar open records statutes.
 
 
          A.
 Standard of Review and Principles of Interpretation
 
 
          ¶8
 We review de novo a lower court's interpretation of CORA,
 Reno v. Marks, 2015 CO 33, ¶ 20, 349 P.3d 248,
 253; Denver Publ'g Co. v. Bd. of Cnty.
 Comm'rs, 121 P.3d 190, 195 (Colo. 2005), and the
 Rules of Civil Procedure, City &Cnty. of Broomfield
 v. Farmers Reservoir &Irrigation Co., 239 P.3d 1270,
 1275 (Colo. 2010). We review our rules in a manner
 "consistent with principles of statutory
 construction." People v. Shell, 148 P.3d 162,
 178 (Colo. 2006).
 
 
          ¶9
 The goal of statutory interpretation is to give effect to the
 intent of the General Assembly. Denver Post Corp. v.
 Ritter, 255 P.3d 1083, 1088 (Colo. 2011). To do that, we
 look to the plain language of the statute and "consider
 it within the context of the statute as a whole."
 Id. Further, "[w]e give effect to words and
 phrases according to their plain and ordinary meaning,"
 and "[w]e avoid interpretations that would lead to an
 absurd result." Id. at 1089. We look to the
 statutory scheme as a whole "to give consistent,
 harmonious, and sensible effect
 
 7
 
 to all its parts." Dep't of Nat. Res. v. 5 Star
 Feedlot, Inc., 2021 CO 27, ¶ 20, 486 P.3d 250, 256.
 
 
          B.
 CORA
 
 
          ¶10
 When it comes to public records, Colorado law favors
 transparency. In enacting CORA, the General Assembly declared
 that "all public records shall be open for inspection by
 any person at reasonable times, except as provided
 in this part 2 or as otherwise specifically provided
 by law." § 24-72-201, C.R.S. (2024) (emphases
 added); see also Denver Publ'g Co. v. Dreyfus,
 520 P.2d 104, 107 (Colo. 1974) ("[W]e are guided by the
 clear legislative intent manifested in the declaration of
 policy and the language of [CORA] itself. Public records are
 to be open for inspection except as provided for in the act
 itself or otherwise specifically provided by
 law."). CORA imposes no limitation "as to the
 reason or reasons for which the inspection is
 undertaken." Martinelli, 612 P.2d at 1093.
 
 
          ¶11
 Section 24-72-204(1)(c) provides that a custodian of a public
 entity "shall allow any person the right of inspection
 of such records" unless "[s]uch inspection is
 prohibited by rules promulgated by the supreme court."
 The phrase "rules promulgated by the supreme court"
 encompasses the Rules of Civil Procedure.
 Martinelli, 612 P.2d at 1093.
 
 
          ¶12
 We turn then to the relevant rules of civil procedure. Rule
 34 governs the production of documents, but it doesn't
 address open records requests. Likewise,
 
 8
 
 Rule 16.1, which governs cases subject to simplified
 procedures such as Roane's declaratory-judgment action
 against the Board, limits litigants to five document
 requests, but it doesn't address CORA requests by
 litigants. C.R.C.P. 16.1(k)(4). More to the point, none of
 the relevant rules prohibits a CORA request during
 litigation. And we are not at liberty to fashion such a rule
 here. Farmers Reservoir &Irrigation Co., 239
 P.3d at 1275 ("Words and provisions should not be added
 to a rule [of civil procedure] ....").[2] Likewise, we are
 not free to simply treat a CORA request as constituting a
 request for production of documents in related litigation.
 Even if we could, line-drawing problems would quickly emerge.
 When would a CORA request be sufficiently related to
 litigation to constitute a request for production of
 documents under the civil rules? When would parties be
 sufficiently related to count for these purposes? Should we
 look to the law of agency to resolve a request from a third
 party acting at the behest of someone like Roane? Would a
 party who's requesting documents for a separate purpose
 be precluded from doing so simply because they're in
 litigation with the entity?
 
 9
 
          ¶13
 Moreover, we must construe statutes as a whole, and section
 24-72-204(5)(b) indicates that both avenues-discovery
 requests and CORA-are available to litigants. This section
 provides that unless the CORA court determines that the
 denial of the inspection request was proper, that court
 "shall award court costs and reasonable attorney fees to
 the prevailing applicant . . . except that no court costs and
 attorney fees shall be awarded to a person who has filed
 a lawsuit against [a public entity] . . . if the court
 finds that the records being sought are related to the
 pending litigation and are discoverable pursuant to" the
 rules. Id. (emphasis added). Thus, section
 24-72-204(5)(b) envisions a scenario in which a litigant
 against a public entity also successfully seeks related and
 discoverable records under CORA from the same public entity.
 
 
          ¶14
 Nothing in CORA's plain language limits inspection simply
 because the public entity is being sued by the requester. On
 the contrary, the plain language strongly suggests that
 Roane's request to Archuleta was proper under CORA. But,
 like the division, we will consider precedent before
 finishing our analysis.
 
 
          C.
 Colorado Precedent
 
 
          ¶15
 Archuleta argues that Martinelli interpreted CORA as
 preventing civil litigants from using the statute to bypass
 discovery procedures. The division observed, however, that
 Martinelli simply "stands for the proposition
 that CORA
 
 10
 
 does not bar production of documents otherwise producible in
 civil litigation." Roane, ¶ 21, 526 P.3d
 at 225. We agree with the division.
 
 
          ¶16
 In Martinelli, the petitioners argued that certain
 limiting language in CORA-protecting personnel files from
 disclosure-also prevented those files from being discoverable
 in civil litigation. 612 P.2d at 1093. We disagreed,
 reasoning that Colorado's open records laws aren't
 intended to "supplant discovery practice in civil
 litigation." Id. Rather, they are
 "directed toward regulation of the entirely different
 situation of the general exploration of public records by any
 citizen during general business hours." Id.
 (quoting Tighe v. City &Cnty. of Honolulu, 520
 P.2d 1345, 1348 (Haw. 1974)). In other words, the
 petitioners' effort to engraft statutory requirements
 onto the Rules of Civil Procedure failed. Likewise,
 Archuleta's effort to insert generic rules of civil
 procedure into a CORA exception fails here. The two legal
 regimes are distinct.
 
 
          ¶17
 In City of Colorado Springs, we considered whether
 Colorado common law contains a deliberative-process privilege
 that protects documents from inspection under CORA. 967 P.2d
 at 1045. Because "the General Assembly 'did not
 intend that the open records laws would supplant discovery
 practice in civil litigation,'" we concluded that
 CORA incorporated common-law privileges. Id. at 1055
 (quoting Martinelli, 612 P.2d at 1093). Thus, as the
 division noted, we interpreted CORA and the rules of civil
 procedure to incorporate certain common-law
 
 11
 
 privileges; we did not interpret them to prohibit the use of
 CORA by litigants against a public entity. Id.;
 Roane, ¶ 21, 526 P.3d at 225-26.
 
 
          ¶18
 In short, we agree with the division that this court's
 precedent does nothing to curtail a litigant's right to
 inspect public documents under CORA during litigation against
 a public entity. Roane, ¶ 21, 526 P.3d at 225
 ("[Martinelli] does not support Archuleta's
 contention that individuals litigating against public
 entities are precluded from obtaining documents from those
 entities through CORA."). Rather, Martinelli
 and City of Colorado Springs offer adjacent opinions
 with which our decision today is consistent. Here, Roane
 didn't give up his right to inspect public documents in
 the Board's possession just because he sued the Board.
 
 
          ¶19
 Having examined our caselaw, we now assess persuasive
 precedent from other jurisdictions.
 
 
          D.
 FOIA
 
 
          ¶20
 Colorado courts have relied on interpretations of CORA's
 federal counterpart, FOIA, to inform interpretation of
 analogous CORA provisions. Wick Commc'ns Co. v.
 Montrose Cnty. Bd. of Cnty. Comm'rs, 81 P.3d 360,
 363 (Colo. 2003). Additionally, "the intent [of CORA and
 FOIA] is the same: an agency cannot improperly withhold
 agency records, and if it does so, the courts are empowered
 to remedy the situation." Id.
 
 12
 
          ¶21
 For example, in NLRB v. Sears, Roebuck &Co., 421
 U.S. 132, 136 (1975), the Supreme Court noted that FOIA
 "seeks 'to establish a general philosophy of full
 agency disclosure unless information is exempted under
 clearly delineated statutory language.'" (Quoting S.
 Rep. No. 89-813, at 3 (1965).) In that case, Sears sought
 inspection of National Labor Relations Board
 ("NLRB") records under FOIA while also litigating
 against the NLRB. Id. at 135-36. The Court noted
 that FOIA "is fundamentally designed to inform the
 public about agency action and not to benefit private
 litigants." Id. at 143 n.10. That meant that
 "Sears' rights under [FOIA] are neither increased
 nor decreased [because its interest in the
 NLRB's documents is] greater than that shared by the
 average member of the public." Id. (emphasis
 added).
 
 
          ¶22
 The division below correctly understood that FOIA doesn't
 prevent litigants from exercising their right to inspect
 public documents without a clear statutory exception. See
 Roane, ¶ 46, 526 P.3d at 229. So too under CORA,
 which features no clear statutory exception for a person
 litigating against a public entity in Colorado.
 
 
          E.
 Other States
 
 
          ¶23
 Courts in Indiana, Tennessee, and Virginia have interpreted
 their states' respective open records acts to permit an
 individual to request inspection from a public entity with
 which the individual is engaged in litigation.
 
 13
 
 See Kentner v. Ind. Pub. Emps.' Plan, Inc., 852
 N.E.2d 565, 575 (Ind.Ct.App. 2006) (concluding that whether
 the requester "intends to use the requested documents to
 watch over IPEP's conduct . . . [,] to supplement his
 case in . . . [l]itigation, or to paper the walls of his
 house with and write a song about[] has absolutely no bearing
 on whether he is entitled to those documents");
 Konvalinka v. Chattanooga-Hamilton Cnty. Hosp.
 Auth., 249 S.W.3d 346, 360-61 (Tenn. 2008) (concluding
 that neither Tennessee's discovery rules nor its public
 records statutes "expressly limit or prevent persons who
 are in litigation with a government entity . . . from filing
 petitions under [Tennessee's public records act] seeking
 access to public records relevant to the litigation" and
 noting that "[a] growing number of courts, construing
 public records statutes similar to ours, have decided that
 persons should not be denied access to public records solely
 because they are involved . . . in litigation with a
 governmental entity"); Stevens v. Lemmie, 40
 Va. Cir. 499, 1996 WL 33472511, at *11 (Va. Cir. Ct. 1996)
 (concluding, based on precedent from the Supreme Court of
 Virginia, that "no exception to [Virginia's open
 records act] . . . precludes its use where the information
 sought may become evidence in a pending or contemplated civil
 action").
 
 
          ¶24
 By contrast, states that do have a
 pending-litigation exception put the statutory exception on
 the books. For example, Michigan's statute has an
 exception for "[r]ecords or information relating to a
 civil action in which the
 
 14
 
 requesting party and the public body are parties." Mich.
 Comp. Laws Ann. § 15.243(1)(v) (West 2023). Vermont,
 too, has an explicit statutory exception. Vt. Stat. Ann. tit.
 1, § 317(c) (West 2023).
 
 
          ¶25
 If, like the legislatures of Michigan and Vermont,
 Colorado's General Assembly wishes to add a CORA
 exception to restrict litigants, it could do so (subject, of
 course, to judicial review). It hasn't done so yet, and
 we won't read in such an exception.
 
 
          III.
 Conclusion
 
 
          ¶26
 We affirm the court of appeals' judgment.[3]
 
 
           CHIEF
 JUSTICE MARQUEZ, joined by JUSTICE SAMOUR, concurred in the
 judgment.
 
 15
 
           CHIEF
 JUSTICE MARQUEZ, joined by JUSTICE SAMOUR, concurring in the
 judgment.
 
 
          ¶27
 I ultimately agree that Matt Roane was entitled to obtain the
 recording of the Archuleta County Board of Commissioners'
 meeting, but only because it amounted to a proper discovery
 request under the rules of civil procedure promulgated by
 this court-not because it was a proper request under
 the Colorado Open Records Act ("CORA"),
 §§ 24-72-200.1 to -205.5, C.R.S. (2024).
 
 
          ¶28
 I write separately to express my grave concern with the
 majority's ruling today, which misconstrues CORA,
 misreads our decision in Martinelli v. District
 Court, 612 P.2d 1083 (Colo. 1980), and inexplicably
 cedes our exclusive constitutional authority to promulgate
 rules governing litigation in our courts. In so doing,
 today's decision creates a lopsided litigation
 environment that will disadvantage public entities subject to
 CORA and will undermine trial courts' ability under the
 Colorado Rules of Civil Procedure to actively manage
 discovery in civil cases involving such public entities. And
 it will impact not only cases governed by C.R.C.P. 16.1, but
 also more complex cases governed by C.R.C.P. 16.
 
 
          ¶29
 Moreover, today's decision does all of this
 unnecessarily. The same result could easily be reached by
 treating Roane's request as appropriate under the rules
 of civil procedure. Because today's decision needlessly
 undermines Colorado's
 
 16
 
 constitutional separation of powers and distorts the
 litigation process for public entities across the state, I
 respectfully concur only in the judgment.
 
 
          I.
 Our Constitutional Rulemaking Authority
 
 
          ¶30
 The question before us is whether a party who is litigating a
 civil action against a public entity may rely on CORA to
 request documents for purposes of that specific litigation,
 rather than follow the discovery rules set forth in the
 Colorado Rules of Civil Procedure promulgated by this court.
 The answer is no. As we made clear decades ago in
 Martinelli, Colorado's open records laws are not
 intended to "supplant discovery practice in
 litigation." 612 P.2d at 1093. Once a litigant invokes
 the court's jurisdiction by commencing litigation, the
 rules of procedure govern discovery in that litigation,
 including limits on the production and inspection of
 documents.
 
 
          ¶31
 The proper starting point for this analysis is not CORA. It
 is the Colorado Constitution.
 
 
          ¶32
 Article VI, section 21 of the Colorado Constitution
 specifically vests this court with rulemaking power. Under
 that provision, "[t]he supreme court shall make and
 promulgate rules governing the administration of all courts
 and shall make and promulgate rules governing practice and
 procedure in civil and criminal cases ...." Colo. Const.
 art. VI, § 21. This express power to adopt rules of
 procedure for the courts is plenary and exclusive. Borer
 v. Lewis, 91 P.3d 375, 380
 
 17
 
 (Colo. 2004); Gold Star Sausage Co. v. Kempf, 653
 P.2d 397, 400 (Colo. 1982). Indeed, nearly a century ago,
 this court observed that, for the legislature to enact
 procedural rules for the courts, such power would have to be
 surrendered by the judiciary:
 
 
 We seriously question the power of the Legislature to make
 any rules or to enact any laws relative to procedure in
 courts. It is doubtful if the Legislature in Colorado could
 have enacted any law with reference to procedure in courts of
 record unless that power had been expressly or tacitly
 surrendered to it by the judiciary.
 
 
 Walton v. Walton, 278 P. 780, 786-87 (Colo. 1929).
 
 
          ¶33
 "Procedural" rules that fall within the ambit of
 this constitutional authority are those that are
 "adopted to permit the courts to function and function
 efficiently." People v. Wiedemer, 852 P.2d 424,
 436 (Colo. 1993). Rules governing discovery (including limits
 on the production and inspection of documents) directly serve
 this objective and thus lie squarely within this court's
 constitutional power to promulgate "rules governing
 practice and procedure in civil . . . cases." Colo.
 Const. art. VI, § 21.
 
 
          ¶34
 "The overriding purpose of the Colorado Rules of Civil
 Procedure is 'to secure the just, speedy, and inexpensive
 determination of every action.'" DCP Midstream,
 LP v. Anadarko Petroleum Corp., 2013 CO 36, ¶ 27,
 303 P.3d 1187, 1194 (quoting C.R.C.P. 1(a)). And the express
 purpose of the simplified procedures of Rule 16.1 in this
 case is to "enhance the provision of just, speedy, and
 inexpensive
 
 18
 
 determination of civil actions . . . and to limit
 discovery and its attendant expense." C.R.C.P.
 16.1(a) (emphasis added).
 
 
          ¶35
 This court has recognized that "[t]he discovery process
 can be abused by disproportionate and inappropriate requests
 that increase the cost of litigation, harass an opponent, or
 tend to delay a fair and just determination of the legal
 issues." In re Attorney D., 57 P.3d 395, 399
 (Colo. 2002). For this reason, "[t]he civil rules, and
 our cases interpreting them, reflect an evolving effort to
 require active judicial management of pretrial matters to
 curb discovery abuses, reduce delay, and decrease litigation
 costs." DCP Midstream, ¶ 4, 303 P.3d at
 1190. Committee comments to Rule 16 make clear that active
 judicial management of cases, including discovery, is
 expected. See C.R.C.P. 16 cmt. 7 ("It is
 expected that trial judges will assertively lead the
 management of cases to ensure that justice is served.");
 C.R.C.P. 16 cmt. 19 (observing the principle that
 "discovery should be in proportion to the genuine needs
 of the case" and that the problems of discovery abuses
 "are greatly alleviated with the intervention of trial
 judges placing reasonable limitations on discovery and
 potentially excessive pretrial practices at the earliest
 meaningful stage of the case"); C.R.C.P. 16.1 cmt. 1
 (observing that the simplified procedure under Rule 16.1 was
 intended to enhance the "just, speedy, and inexpensive
 determination of cases," particularly cases seeking
 damages of less than $100,000).
 
 19
 
          ¶36
 Consistent with these principles, Rule 26(b)(1) allows trial
 courts to ensure that discovery is relevant and proportional
 to the needs of the case:
 
 
 [P]arties may obtain discovery regarding any matter, not
 privileged, that is relevant to the claim or defense of any
 party and proportional to the needs of the case, considering
 the importance of the issues at stake in the action, the
 amount in controversy, the parties' relative access to
 relevant information, the parties' resources, the
 importance of the discovery in resolving the issues, and
 whether the burden or expense of the proposed discovery
 outweighs its likely benefit.
 
 
 C.R.C.P. 26(b)(1).
 
 
          ¶37
 In addition to these general limits on discovery, we have
 adopted specific limits on the quantity and timing of
 discovery requests-including the production and inspection of
 documents. Rule 16 limits discovery to what is allowed under
 C.R.C.P. 26(b)(2), unless otherwise ordered by the court.
 C.R.C.P. 16(b)(11). Rule 26, in turn, limits parties to
 twenty requests for production of documents and prohibits
 parties from seeking discovery before the court issues a case
 management order. C.R.C.P. 26(b)(2)(D), (d). Rule 16.1 is
 even more restrictive, limiting parties to five requests for
 production of documents. C.R.C.P. 16.1(k)(4)(B). Rule
 34(a)(1) fleshes out the scope of permissible requests
 "to inspect and copy any designated documents."
 C.R.C.P. 34(a)(1). And Rule 34(b) establishes the procedure
 for requesting items to be produced for
 "inspection." C.R.C.P. 34(b). The rules also govern
 the timing of the production and inspection of documents,
 allowing thirty-five days to respond to requests for
 production,
 
 20
 
 see C.R.C.P. 16(b)(11), 26(b)(2)(D), 34(b), and
 permitting case management orders to establish discovery
 deadlines, see C.R.C.P. 16(b).
 
 
          ¶38
 In sum, once the trial court's jurisdiction has been
 invoked through litigation, the rules of procedure
 promulgated by this court govern that litigation, including
 the rules of discovery that govern the production and
 inspection of documents. Nothing in CORA overrides this
 fundamental principle.
 
 
          II.
 CORA and Martinelli
 
 
          ¶39
 Contrary to the majority's reasoning, both CORA and our
 decision in Martinelli expressly recognize the
 primacy of this court's procedural rules in the context
 of litigation.
 
 
          ¶40
 Under CORA, "[a]ll public records shall be open for
 inspection by any person at reasonable times, except as
 provided [in the exceptions set forth in CORA] or as
 otherwise provided by law." § 24-72-203(1)(a),
 C.R.S. (2024). The CORA exception relevant here appears in
 section 24-72-204(1)(c), C.R.S. (2024). Under that provision,
 a custodian of public records "shall allow any person
 the right of inspection of such records" unless
 "[s]uch inspection is prohibited by rules promulgated by
 the supreme court or by the order of any court."
 Id.
 
 
          ¶41
 The majority acknowledges that the phrase "rules
 promulgated by the supreme court" in section
 24-72-204(1)(c) encompasses the rules of civil procedure.
 Maj. op. ¶ 11. Our decision in Martinelli
 established as much. 612 P.2d at 1093.
 
 21
 
 The majority then reasons that "none of the [rules of
 procedure governing discovery] prohibits a CORA request
 during litigation." Maj. op. ¶ 12. But as discussed
 above, the Colorado Rules of Civil Procedure expressly limit
 the production and inspection of documents in litigation-the
 very subject matter of CORA. § 24-72-204(1) (providing a
 "right of inspection" of public documents)
 (emphasis added). Section 24-72-204(1)(c) acknowledges that
 this right of inspection is circumscribed by rules
 promulgated by this court, which include the rules of civil
 procedure. Martinelli, 612 P.2d at 1093.
 
 
          ¶42
 Put differently, CORA, through section 24-72-204(1)(c),
 contemplates the existence of court rules that inhibit the
 public's right to inspect documents. And our rules of
 civil procedure impose express limitations on discovery,
 including the right to inspect documents during litigation.
 See, e.g., C.R.C.P. 16.1(k)(4), 26(b)(1),
 26(b)(2)(D), 34(a)-(b). The majority's suggestion that
 section 24-72-204(1)(c) requires our court rules to expressly
 refer to CORA-even though they clearly apply to CORA's
 subject matter-both disregards Martinelli and
 elevates form over substance.
 
 
          ¶43
 More fundamentally, the majority's analysis misconstrues
 CORA's relationship to this court's rulemaking
 authority. Section 24-72-204(1)(c) is not a legislative grant
 of permission; rather, consistent with separation of powers
 principles, it is the general assembly's acknowledgment
 of this court's inherent
 
 22
 
 constitutional authority to promulgate rules governing
 practice and procedure in civil and criminal cases.[1] We made that clear in
 Martinelli when we observed that the language in
 section 24-72-204(1)(c) "indicates that the legislature
 did not intend that the open records laws would supplant
 discovery practice in civil litigation." 612 P.2d at
 1093.
 
 
          ¶44
 I also disagree with the majority's reading of
 Martinelli. There, the plaintiff sued the City and
 County of Denver, the Denver Police Department, and
 individual police officers in a civil action alleging police
 misconduct. The plaintiff sought production of the
 officers' personnel files and internal investigation
 reports. Id. at 1086. The defendants objected to
 discovery of these documents on the grounds that the
 documents were (1) irrelevant to the plaintiff's causes
 of action; (2) privileged materials; (3) protected by the
 officers' right to privacy; and (4) exempted from
 discovery under CORA sections 24-72-204(3)(a)(II) and
 24-72-305(5), C.R.S. (2024). Martinelli, 612 P.2d at
 1087. This court analyzed each of these arguments under the
 rules of procedure. It evaluated the defendants' first
 
 23
 
 two arguments regarding relevance and privilege under Rule
 26. Id. at 1087-91. In addressing the
 defendants' constitutional privacy argument, the court
 likewise considered Rule 26 and the possible issuance of a
 protective order. Id. at 1092-93, 1093 n.4. Finally,
 the court rejected the defendants' argument that the
 requested documents were exempted from discovery under CORA,
 reasoning that CORA did not "supplant discovery practice
 in civil litigation." Id. at 1093-94.
 
 
          ¶45
 The majority accurately states that Martinelli
 stands for the proposition that "CORA does not bar
 production of documents otherwise producible in civil
 litigation." Maj. op. ¶ 15 (quoting Roane v.
 Archuleta, 2022 COA 143, ¶ 21, 526 P.3d 220, 225).
 But the point of Martinelli is that this court's
 rules of procedure-not CORA-establish the applicable limits
 of what is discoverable in the context of litigation. Indeed,
 the Martinelli court remanded the case to the
 district court with directions to conduct another in camera
 inspection of the personnel files and investigation reports
 and to order discovery of materials contained in those
 reports, subject to appropriate protective orders. 612 P.2d
 at 1094. The upshot: The rules of civil procedure governed
 the litigation, not CORA.
 
 
          ¶46
 Even section 24-72-204(5)(b) reflects the supremacy of this
 court's authority and rules in the context of pending
 litigation. That provision prohibits the award of attorney
 fees and costs under CORA to a person who has filed a lawsuit
 against a public entity and who attempts to rely on CORA
 provisions for access to records
 
 24
 
 that instead fall within the rules of discovery (i.e.,
 records that "are related to the pending litigation and
 are discoverable pursuant to chapter 4 of the Colorado rules
 of civil procedure"). § 24-72-204(5)(b). In other
 words, section 24-72-204(5)(b) makes clear that persons who
 have commenced litigation cannot use CORA to circumvent the
 rules of discovery. Specifically, they may not seek attorney
 fees under CORA from the public entity against which they
 have brought suit.
 
 
          ¶47
 To be clear: Outside the context of litigation, CORA governs
 records requests made of public entities.[2] Individuals and organizations
 may-and routinely do-submit any number of CORA requests to
 public entities to gather records, often to prepare for
 litigation. But once litigation commences and the court's
 jurisdiction has been invoked, the rules of civil procedure
 govern the discovery pertaining to that litigation.[3]
 
 25
 
          III.
 Non-Colorado Law
 
 
          ¶48
 Because of the uniqueness of Colorado's constitution and
 CORA, nonColorado law is unhelpful here. In the federal
 context, "Congress has undoubted power to regulate the
 practice and procedure of federal courts." Sibbach
 v. Wilson &Co., 312 U.S. 1, 9 (1941). Although
 Congress has given the United States Supreme Court the power
 to make court rules in the Rules Enabling Act, 28 U.S.C.
 §§ 2071-2077, it has done so as a legislative grant
 of authority. Article III of the United States Constitution
 contains no language comparable to article VI, section 21 of
 the Colorado Constitution, which directly vests this court
 with rulemaking power. Thus, to the extent FOIA may conflict
 with federal court rules, it does not give rise to the same
 constitutional separation of powers concern present here.
 
 
          ¶49
 Additionally, nothing in FOIA expressly allows requests to be
 denied under court rules of procedure. 5 U.S.C. §
 552(b). Section 24-72-204(1)(c) thus marks a material
 difference between CORA and FOIA. The majority cites NLRB
 v. Sears, Roebuck &Co., 421 U.S. 132, 136 (1975),
 for the notion that both FOIA and CORA "seek[] 'to
 establish a general philosophy of full agency disclosure
 unless information is exempted under clearly delineated
 statutory language.'" (Quoting S. Rep. No. 89-813,
 at 3 (1965)); see also Maj. op. ¶ 22. But
 section 24-72-204(1)(c) is Colorado's
 "clearly delineated statutory language," which
 recognizes that CORA is constitutionally limited in the
 litigation context.
 
 26
 
          ¶50
 Other states' laws are similarly unhelpful. State
 statutes dealing with access to public records are diverse,
 and none of the statutes cited by the majority broadly
 prohibit record requests that conflict with rules of
 procedure or court orders, as does section 24-72-204(1)(c).
 See Ind. Code Ann. § 5-14-3-4 (West 2024);
 Tenn. Code Ann. § 10-7-504 (West 2024); Va. Code Ann.
 § 2.2-3705.1 (West 2024); Mich. Comp. Laws Ann. §
 15.243 (West 2024); Vt. Stat. Ann. tit. 1, § 317 (West
 2024). Moreover, unlike in Colorado, the constitutions of
 Indiana and Tennessee do not expressly vest their supreme
 courts with rulemaking power. Ind. Const. art. VII,
 §§ 1-21; Tenn. Const. art. VI, §§ 1-12.
 And the rulemaking authority granted to the Virginia Supreme
 Court is qualified, in that "such rules shall not be in
 conflict with the general law as the same shall, from time to
 time, be established by the General Assembly." Va.
 Const. art. VI, § 5. Finally, if anything, the pending
 litigation exceptions found in Michigan and Vermont's
 public records acts effectively confirm the constitutional
 rulemaking power granted to the supreme courts of those
 states. Mich. Comp. Laws Ann. § 15.243(1)(v); Vt. Stat.
 Ann. tit. 1, § 317(c)(14). Given the diverse
 constitutions and statutes across this country, the law from
 other states cited by the majority does not support its
 position.
 
 
          IV.
 The Impact of Today's Ruling
 
 
          ¶51
 The impact of today's ruling is far-reaching. Although
 this case involves a single request for production of
 documents in a simplified Rule 16.1 proceeding,
 
 27
 
 today's decision will affect all civil litigation. By
 ceding this court's plenary and exclusive authority to
 promulgate rules governing the production and inspection of
 documents in litigation, today's decision effectively
 nullifies our discovery rules in civil litigation involving
 public entities subject to CORA.
 
 
          ¶52
 After today, litigants who sue public entities can file
 unlimited CORA requests for the inspection of documents they
 would otherwise have to acquire through the rules of
 discovery. And they can do so without regard to discovery
 deadlines or limitations. This subverts both Rule
 16.1(k)(4)(B) and Rule 26(b)(2)(D)'s numeric limit on
 document requests. It also subverts Rule 16's discovery
 deadlines, which provide that discovery must be completed
 "not later than [forty-nine] days before the trial
 date." C.R.C.P. 16(b)(11).
 
 
          ¶53
 If, as the majority holds, CORA represents a freestanding
 statutory right to inspect documents, then private parties
 can arguably ignore any timelines a court may set under a
 Rule 16(b) case management order.[4] And while C.R.C.P. 34(b) gives
 litigants thirty-five days to respond to a discovery request,
 CORA requires documents to be available for inspection within
 three to seven working days. § 24-72-203(3)(b). Thus,
 public entities faced with CORA requests in lieu of
 
 28
 
 requests for production will have to turn over documents in
 an expedited manner-and must respond to such requests even
 after discovery deadlines have passed. Litigants can also use
 CORA to bypass relevancy and proportionality requirements in
 the discovery rules. C.R.C.P. 26(b)(1) requires trial courts
 to ensure discovery is proportional, meaning that discovery
 requests are relevant to the claims and defenses, that the
 costs of discovery do not outweigh its benefits, and that the
 amount of discovery is proportional to the amount in
 controversy and to the complexity of the issues. But after
 today, private litigants can make unlimited CORA requests of
 public entities during litigation, regardless of relevance or
 proportionality to the needs of the case. This will have an
 especially profound effect in Rule 16.1 cases, which are
 specifically intended to "limit discovery and its
 attendant expense." C.R.C.P. 16.1(a).
 
 
          ¶54
 What is particularly unsettling about today's ruling is
 that it results in an uneven playing field in litigation for
 state agencies and local government entities subject to CORA.
 Those entities must abide by discovery limits and deadlines,
 but after today's ruling, their private opponents need
 not do the same. Indeed, a private litigant could submit a
 flurry of CORA requests simply to overwhelm an opposing
 public entity during litigation, including on the eve of
 trial. The potential impact on public entities cannot be
 overstated.
 
 29
 
          ¶55
 Any suggestion that a trial court can simply manage this new
 environment by regulating the admission of documents on the
 back end is wishful thinking and is unfair to our trial
 courts. The majority notes that its opinion should not limit
 courts' ability to "otherwise regulate discovery and
 the admissibility of evidence in [an] action" and that
 "[r]ecords and information obtained under CORA are not
 immune from scrutiny under the governing procedural and
 evidentiary rules." Maj. op. ¶ 27 n.2. But it is
 unclear how a trial court could be expected to use procedural
 or evidentiary rules to limit the impact of today's
 ruling on the management of discovery in litigation.
 Even if a trial court could preclude the admission of
 documents obtained through CORA, additional hearings will
 likely be necessary to determine which documents a party
 obtained through which request. These issues will spawn
 additional litigation, including by injecting appealable
 issues into the case. Such an approach undermines the intent
 of the rules of civil procedure, which require active
 management of the discovery process to secure the "just,
 speedy, and inexpensive determination of every action."
 C.R.C.P. 1(a).
 
 
          ¶56
 Finally, all of these impacts could be readily avoided.
 Roane's single request does not appear to have violated
 any rule or court order (at least, Archuleta County has
 failed to identify any such violation). The underlying case
 between Roane and Archuleta County was subject to the
 simplified procedures in Rule 16.1,
 
 30
 
 and thus Roane was entitled to five document requests.
 C.R.C.P. 16.1(k)(4)(B). His request for the recording was the
 only request for any record. Further, Rule 16.1(f) does not
 require the court to issue a case management order, and it
 does not appear that the district court issued any such order
 or set any specific discovery deadlines. Accordingly,
 Roane's request did not violate any rules of civil
 procedure or court orders. To resolve the dispute before us,
 I would simply construe Roane's request as a proper
 discovery request and allow it.
 
 
          V.
 Conclusion
 
 
          ¶57
 Colorado's Constitution squarely vests this court with
 exclusive authority to promulgate rules governing practice
 and procedure in civil and criminal cases. Today's
 decision unnecessarily relinquishes that power despite
 CORA's express recognition of our rulemaking authority,
 and despite our rules specifically limiting the production
 and inspection of documents in litigation. As we said in
 Martinelli, CORA was not intended to "supplant
 discovery practice in civil litigation." 612 P.2d at
 1093. But after today, I fear that CORA will be used to do
 exactly that.
 
 
          ¶58
 Our rules of civil procedure demand active management of
 discovery in litigation to secure the just, speedy, and
 inexpensive determination of every action. Evenhanded
 application of those rules ensures equal treatment of all
 parties who come before our courts, including government and
 public entities. Today's decision not only upsets decades
 of settled expectations under Martinelli, but it
 
 31
 
 upends the litigation playing field and will negatively
 impact government and public entities subject to CORA.
 
 
          ¶59
 I respectfully concur in the court's judgment only.
 
 
           I am
 authorized to state that JUSTICE SAMOUR joins in this
 concurrence.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following issue:
 
 
 1. Whether the lower courts committed reversible error
 by allowing a party, who is litigating a civil action against
 a public entity, to use an open records request to obtain
 documents relevant to the pending litigation[] instead of
 complying with the rules of discovery as set forth in the
 Colorado Rules of Civil Procedure.
 
 
 [2] Article VI, section 21 of the Colorado
 Constitution vests this court with the power to "make
 and promulgate rules governing practice and procedure in
 civil and criminal cases." But this court has not
 promulgated a rule prohibiting the use of CORA by litigants.
 Therefore, we need not address any separation-of-powers
 concerns that arguably exist in this context.
 
 
 [3] Nothing in this opinion should be
 construed to limit the authority of the court presiding over
 the declaratory-judgment action to otherwise regulate
 discovery and the admissibility of evidence in that action.
 Records and information obtained under CORA are not immune
 from scrutiny under the governing procedural and evidentiary
 rules once a party seeks to deploy them as evidence in a
 civil proceeding. Legal authority to obtain records does not
 automatically bestow authority to use those records in
 court.
 
 
 [1] Section 13-2-108, C.R.S. (2024),
 likewise recognizes our inherent constitutional authority to
 govern court procedure. That provision reiterates that the
 supreme court has the power to create rules of "practice
 and procedure in civil actions and all forms in connection
 therewith." Id. As we observed over a century
 ago, section 13-2-108 "was not a delegation of
 legislative authority. The regulation of its own practice and
 procedure has always been a matter for the court ...."
 Ernst v. Lamb, 213 P. 994, 995 (Colo. 1923).
 
 
 [2] The Public Access to Administrative
 Records Rules ("P.A.I.R.R.") govern requests for
 administrative records of the Judicial Department. P.A.I.R.R.
 2 states, "This rule is intended to be a rule of the
 Supreme Court within the meaning of CORA, including section
 24-72-204(1)(c) ...." Although the majority appears to
 suggest that the Civil Rules Committee could simply
 incorporate similar language into the rules of civil
 procedure, see Maj. op. ¶ 12 & n.2, it is
 unnecessary. It is clear that the rules of civil procedure
 are "rules promulgated by the supreme court."
 § 24-72-204(1)(c); Martinelli, 612 P.2d at
 1093.
 
 
 [3] A party is free, of course, to rely on
 CORA to seek records from a public entity that are unrelated
 to the specific litigation at hand. In any event, the
 majority's hypothetical "line-drawing" concerns
 should not preclude us from resolving the case on the facts
 here. See Maj. op. ¶ 12. It is undisputed that
 Roane requested the recording at issue for use in this
 litigation. Roane, ¶ 6, 526 P.3d at
 223.
 
 
 [4] I acknowledge that today's
 decision seems to leave open the possibility that a case
 management order could expressly prohibit the parties from
 using CORA to obtain discoverable documents.
 
 
 ---------